IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHARLES MILLER, | Case No. 1:22-cv-1758 |
| Petitioner, | JUDGE JAMES R. KNEPP II |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| LEON HILL, WARDEN | |
| Respondent. | **REPORT AND RECOMMENDATION** |

Petitioner Charles Miller, an Ohio prisoner serving an aggregate sentence of life imprisonment with a possibility of parole after 30-plus years for aggravated murder, aggravated robbery, murder, felonious assault, and having weapons under disability, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF Doc. 1. Miller asserts six grounds for relief:

**Ground One**: Petitioner's Constitutional and statutory speedy trial rights were violated. *See* ECF Doc. 1 at 5.

**Ground Two**: Petitioner's Sixth Amendment right to effective assistance of counsel and to a fair trial were violated when the trial court failed to grant a mistrial. *See id.* at 7.

**Ground Three:** The trial court erred by denying Petitioner's motion to recuse. *See id.* at 8.

**Ground Four:** Petitioner's convictions were against the manifest weight of evidence. *See id.* at 10.

**Ground Five:** The trial court erred by denying Petitioner's motion for acquittal under Ohio Crim. R. 29. *See id.*

**Ground Six:** The trial court erred by denying Petitioner's request for a reckless homicide jury instruction. *See id.*

Respondent, Warden Leon Hill, filed a return of writ, arguing that Miller's habeas petition should be denied because his claims are noncognizable and/or meritless.  ECF Doc 6.  Miller filed a traverse that only asserts arguments in support of Ground One (speedy trial violation) and Ground Three (denial of the motion to recuse).  ECF Doc. 9 at 3-14.

I recommend that Miller's claims be resolved in the following manner: (i) Ground One be DISMISSED in part as noncognizable and DENIED in part as meritless; (ii) Ground Two's claim concerning the denial of the motion for mistrial be DISMISSED as noncognizable or DENIED as meritless; (iii) Ground Two's claim concerning ineffective assistance of counsel be DENIED as meritless; (iv) Ground Three be DISMISSED as noncognizable; (v) Grounds Four and Five be construed together as asserting a sufficiency of the evidence claim and collectively DENIED as meritless; and (vi) Ground Six be DISMISSED as noncognizable or DENIED as meritless.  I further recommend that Miller not be granted a COA.

I.      **State Court History**

      A.      **Trial Court Proceedings**

           1.      **Pre-trial Proceedings**

In March 2018, a Cuyahoga County, Ohio grand jury issued an indictment that charged Miller with: two counts of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) (Count 1) and § 2903.01(B) (Count 2); one count of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(3) (Count 3); one count of murder in violation of Ohio Rev. Code § 2903.02(B) (Count 4); one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) (Count 5); and two counts of having weapons under disability in violation of Ohio Rev. Code § 2923.13(A)(3) (Count 6) and § 2923.13(A)(2) (Count 7).  ECF Doc. 6-1 at 6-11.  Counts 1 through 5 carried three firearm specifications pursuant to Ohio Rev. Code

2

§§ 2941.141(A) and 2941.145(A), (D).  *Id.* at 6-10.  Counts 3 and 5 also carried additional specifications for: (i) notice of prior conviction pursuant to Ohio Rev. Code § 2929.13(F)(6); and (ii) repeat violent offender pursuant to Ohio Rev. Code § 2941.149(A).  *Id.* at 8, 10.

On September 24, 2018, Miller filed a *pro se* motion to disqualify and remove counsel, which alleged his appointed attorneys – Fernando Mack and Mary Tipping – failed to communicate nine continuances, interview witnesses, request expert reports, and provide/review all discovery.  *Id.* at 15-18.  Two days later, Miller filed two more *pro se* motions: (i) a motion to dismiss the indictment based on speedy trial violation, *id.* at 20-24, 236; and (ii) a motion for a psychological exam, *id.* at 236.

At a hearing on October 31, 2018, the court addressed Miller's motion for a psychological exam and his new request to represent himself.  ECF Doc. 6-2 at 5-6.  The court engaged in a colloquy to determine if Miller's waiver of counsel was knowing and voluntary and informed him that issues and material related to his waiver would be reassessed after a competency hearing was completed.  *Id.* at 11-13.  After Miller indicated that he did not understand the information presented about waiving his right to counsel, the court stopped the hearing and informed Miller that he would be sent to the court psychiatrist clinic to evaluate his competency; thereby, granting Miller's motion for a psychological exam.  *Id.* at 13-14.

On December 28, 2018, the court granted Miller's motion to represent himself after conducting a colloquy and finding that Miller had voluntarily, knowingly, and intelligently waived his right to counsel.  *Id.* at 15-56.  On January 3, 2019, Miller informed the court that he no longer wished to proceed *pro se* and asked for his former counsel (Mack and Tipping) to be reappointed.  *Id.* at 114-16.  On January 4, 2019, Miller consented to a continuance and the court granted his motion for appointment of new counsel.  *Id.* at 152-53.  On January 11, 2019,

3

Miller's newly appointed counsel made an oral motion for dismissal based on speedy trial violation.  *Id.* at 155-57.

On March 15, 2019, Miller filed another *pro se* motion to dismiss based on a speedy trial violation.  ECF Doc. 6-1 at 26-29.  On March 29, 2019, Miller, by and through counsel, signed and filed a waiver of his speedy trial rights under federal and Ohio law and consented to a continuance until July 31, 2019.  *Id.* at 31.  The same day, the trial court: (i) denied the oral speedy trial motion made by Miller's counsel at the January 11 hearing; (ii) noted that Miller had waived speedy trial from March 29, 2019 to July 31, 2019 in writing and in open court; and (iii) granted Miller's motions for appointment of an investigator and appointment of an independent psychiatrist.  *Id.* at 33; ECF Doc. 6-2 at 165-72.

On August 7, 2019, Miller filed a motion to suppress all evidence obtained in the search of his cell phone by Cleveland Police Department personnel, arguing that the police had no probable cause to stop, search, and arrest Miller and the cell phone records were therefore the fruits of an illegal seizure.  ECF Doc. 6-1 at 36-40.  Miller filed a motion for the trial judge to recuse herself from the suppression hearing because she had signed the search warrant that was related to the motion to suppress and "[t]he officer materially misrepresented things to you, so if he misrepresented things to you that you would have to ultimately suppress those issues with respect to that, that places you in a very tenuous position with respect to recusing yourself with respect to that."  ECF Doc. 6-2 at 181-83.  The trial court denied motion to recuse, stating:

> There has been no case law presented to me that indicates that because a judge signed a search warrant on a case they cannot be the trial judge.  And further, as the trial judge I sign many, many warrants.  And I have absolutely no recollection of this particular warrant and the facts that were sworn to by the police officer.  And so I am going to deny the motion to recuse.  I will listen to the motion to suppress.

4

> And it's a legal issue. You've put into issue some things that maybe that were in the search warrant is what I'm gathering from what you're saying. And I am confident that I will be able to review it fairly and impartially.

*Id.* at 183-84. On August 19, 2019, the trial court conducted the hearing on Miller's motion to suppress all evidence obtained from his cell phone. *Id.* at 208-55. Ultimately, the court denied the motion to suppress. *Id.* at 255; ECF Doc. 6-1 at 82.

On August 19, 2019, Miller waived his right a to jury trial on Counts 6 and 7 (having weapons under disability). ECF Doc. 6-1 at 86; ECF Doc. 6-2 at 193-96.

### 2. Relevant Proceedings During Trial

On August 21, 2019, defense counsel moved for a mistrial after an alleged outburst from the gallery in the presence of the jury. ECF Doc. 6-4 at 549. The motion was addressed in the following manner:

> [Defense Counsel]: We make a motion for a mistrial based on the outburst from I believe the victim's family that yelled in front of the jury that our client was a -- something like a rotten murderer who killed a man in a wheelchair and had to be escorted out of the room.
>
> We feel that's a[n] unfairly prejudicial type of victim impact. It's been placed in front of the jury. So for the record we'd make a motion.
>
> [Prosecution]: Your Honor, the State would submit that while it was an unwarranted outburst everyone regrets, we obviously did not ask for it so it was not occasioned by the State and the State is of the opinion that a curative instruction to disregard an outburst of that nature is sufficient and a mistrial is not necessary or warranted at this point.
>
> * * *
>
> The Court: The motion is denied. [The outburst] was very short. I'm not sure how much the jury could hear. The deputies were talking over her as she was talking as was I, so I'm not sure anything was even heard by the jurors. And I would be happy to give a curative instruction. If you would like to consider that over the lunch hour I will give it or formulate my own. Whatever you wish.
>
> * * *

The Court: All right. We're back on the record but the jury is not in. The defense had an opportunity to discuss what they would like as a curative instruction regarding someone in the gallery speaking out, about the outburst.
        It's my understanding the defense does not want a curative instruction.

[Defense Counsel]: Judge, it's our belief we would just draw further attention to it by bringing it up. That in no way waives or diminishes our motion for mistrial and I understand what the law is generally on curative instruction. Then we've doubled it rather than left it alone.
        We would understand the court's ruling when you denied our motion for mistrial but we feel a curative instruction would draw attention.

The Court: All right. I will not give a curative instruction.

[Prosecution]: And can the record reflect that the defendant was present for this discussion?

The Court: Yes.

*Id.* at 549-52.

After the prosecution had rested its case, Miller made two oral motions for judgment of acquittal pursuant to Ohio Rule of Criminal Procedure 29(A). ECF Doc. 6-6 at 178-79; ECF Doc. 6-7 at 6. The trial court denied both motions for acquittal. ECF Doc. 6-1 at 88; ECF Doc 6-6 at 179; ECF Doc. 6-7 at 6.

### 3. Facts Established at Trial

The Ohio Court of Appeals found that the following facts were established by the trial evidence:

{¶2} On October 11, 2017, Miller bought a blue Mercury Grand Marquis from Center Road Auto and presented his driver's license with an address of 610 Mohawk Street Roswell, Georgia during the purchase. On October 27, 2017, Miller drove the blue Mercury to Steelyard Commons to meet Timothy Settles who drove a black SUV.

{¶3} That same day, Ronald Constant and Amy Jones visited Steelyard Commons together to go to the Burlington Coat Factory. As Constant walked out of the Burlington Coat Factory, he saw an SUV in the parking lot. The engine was running and a man was seated in the driver's seat. Constant also saw someone in

6

the passenger seat.  He could discern that the passenger was tall but not what the driver and passenger were doing.

{¶4} Jones testified that she could see a white man and a black man in the SUV. She would later identify the white man as Miller.  Police would later identify the black man as Settles.  Jones testified that the black man appeared to be asleep.  She observed Miller going through a backpack.

> [Miller] was going through the bag and I see like tools and stuff coming out of the bag * * *. Then I seen him reach other to the driver's side and looked like he was going through his pockets.
>
> * * *
>
> Q. Could you actually see what his hands were doing at the moment?
> A. Just looked like he was in pockets because he was in front of him, reached over in front of him. Looked like he was going through his pockets.
> Q. Did you see him take anything from the person of the black male?
> A. Only thing I seen him take was the bag.

{¶5} Jones asked Constant not to leave the parking lot because it "didn't look right."  Jones stepped out of Constant's car and walked to the SUV and tapped on the window.

> The black person didn't move so I opened up the door and noticed that the * * * SUV was still running. And I looked over and I seen a little hole and a little blood come out of his nose.
> Q. Just now you were using your index finger on the right side of your face and head. Is that what you saw on that person in the driver's seat?
> A. Yes.
> Q. And you saw a hole on the right side of his head?
> A. Yes.
> Q. And something dripping from it?
> A. Yes. Something dripping from his nose.
> Q. When you say you saw something dripping from the hole on the side of his head was that blood?
> A. It looked like blood and maybe tissue and the blood coming out of his nose.
>
> * * *
>
> Q. If you recall did anyone else join you at that driver's door while this was happening?
> A. Some young lady came out of the store because once I opened up the car door, I was like, wow, this guy is dead.  And then she walked over and she touched on him and she said he was.

{¶6} At this point, according to Jones, Miller drove the blue car "up the hill." Jones later picked out a photograph of Miller from a photo array and identified him as the person she saw in the SUV and driving away in the blue car.

{¶7} Constant, in addition to other bystanders, called police.

{¶8} Officers Goellner and Taylor responded to a call of "unresponsive male in his vehicle." They arrived after paramedics had pronounced Settles deceased. The officers secured the scene, moved nearby vehicles and canvassed bystanders for potential witnesses. Cleveland Police Department Homicide Unit detectives, including Detective Kevin Fischbach, arrived on the scene. The police towed the SUV, with Settles still in it, to the office of the Cuyahoga County Medical Examiner.

{¶9} Miller's temporary license tags were visible on security video obtained from Steelyard Commons. However, the actual license number was not legible. Detective Fischbach testified that he caused specialists to download the history of Settles' cellular phone. Settles' cellular phone records included calls shortly before his death from a specific number. Detective Fischbach determined that the phone number was associated with Miller's Facebook account. Detective Fischbach also testified that the investigation determined that Settles was dealing drugs and Fischbach observed suspected narcotics on the driver's side of the vehicle.

{¶10} Following the discovery of Miller's Facebook account, Jones identified Miller in a photo array as the "white man" she saw in the Burlington Coat Factory parking lot.

{¶11} Several months after the shooting, Miller returned to Center Road Auto and traded the Grand Marquis for a Ford Ranger truck. However, due to issues with the title, the dealership took the truck back and returned the Mercury to Miller which Miller sold in Chattanooga, Tennessee.

{¶12} Cuyahoga County Deputy Medical Examiner, Andrea McCollom, testified that:

A. * * * [t]he wound is to the right temple right above the ear. And it goes in through the scalp and through the underlying skull and basically goes just right to left. And I recovered the bullet right above the ear on the left side.

* * *

Q. Now, path and trajectory of the bullet wound you can describe the path of travel, but there are certain things you cannot conclude about the head position at the time the wound was received; is that correct?
A. Yes.

8

Q. And why is that?

A. Well, the head pivots and so its position — because there's no evidence of any other injuries one of the things we look for is fouling and stippling. Fouling — when a gun goes off, a lot of things come out of the muzzle of the gun. One of those things is burned gun powder, so soot, and that's called fouling. So you'd see black soot on the surface of the skin.

Another thing is stippling and that's unburned gun powder that comes out of the end of the gun and strikes the skin and causes an abrasion. And so we look for those things on the body. So you can either see it directly around a wound or you can see it on parts of the body that are in proximity to that part — the body part where the gunshot goes in.

I did not see any fouling or stippling anywhere on his body. So that means that either there was an intervening target, the most common intervening target is clothing, so if there's something deposited on the clothing that he was wearing. Or the gun is so far away that those things fall away and just the bullet makes it to the skin.

* * *

So, when those things are deposited, so soot, it's light and airy and it doesn't go very far. But the powder, the unburned gun powder is a little bit heavier so it will be propelled a little bit farther.

Basically for handguns just in general that's about 12-inches [f]or soot and up to three feet for the powder.

It's different for every gun. In order to know exactly how far that — what that gun's properties are you have to test-fire the gun itself which we would do at our office.

{¶13} McCollom also testified that the wound would have caused immediate incapacitation and death. Finally, McCollom testified that she did not rule the shooting accidental or suicidal because there was no fouling or stippling evidence on Settles' body. Thus, the evidence suggested that the gun was fired a moderate distance away from Settles.

{¶14} Curtiss Jones, supervisor of the trace evidence department at the Cuyahoga County Medical Examiner's Office, testified that there was no indication that any bullet struck the exterior of the vehicle. Jones recovered a spent cartridge casing from the inside of the vehicle. Jones ran a trace metal detection test on the hands of Settles, but the test was negative which, he testified, suggests that [Settles] likely did not handle a metal object shortly before his death. A cell phone was also recovered from the SUV. Settles' pockets were turned out when investigators arrived at the scene. As a result, DNA samples were taken from Settles' front right pocket opening, front left pocket opening and the rear right pocket. Jones authenticated photographs that showed the center console of the vehicle with its lid raised and suspected bags of drugs in the driver's armrest.

9

{¶15} Additionally, Settles' hair contained no observable powder grains, which suggests a short distance of four to five feet. Jones testified that the state's theory that Miller shot Settles while Miller sat in the passenger seat was consistent with the forensic evidence.

{¶16} Jeffrey Oblock, a forensic scientist in the DNA department of the Cuyahoga County Regional Forensic Science Laboratory testified that DNA swabs from the left front pocket and the right rear pocket matched the Defendant as did swabs taken from the passenger door interior handle and door pull of Settles' vehicle.

{¶17} Steelyard Commons security officer Zachary Holliday was dispatched to a Party City store the next day to retrieve an unattended and abandoned backpack which was left in their store. It was later discovered that the bag contained drug paraphernalia. Steelyard security officers, recalling that the suspect in the shooting the day before had been seen with a backpack, turned the backpack over to a Cuyahoga County special deputy who works security at Steelyard Commons and she submitted it to the Cleveland Police Department.

{¶18} Settles' mother testified that he carried a backpack at all times. However, no witness at trial identified the recovered backpack as belonging to Settles.

{¶19} Keith Curtin, a detective for the Medina County Sheriff's Office, testified that he executed a search warrant for a suspected residence of Miller in connection with a separate investigation in Medina County. The search of the residence recovered a ZTE cellular phone, which was identified by serial number. Sometime later, Curtin obtained a password for the phone.

{¶20} William Davidson, an intelligence analyst for the FBI testified that he examined the ZTE phone retrieved by Detective Curtin and determined that there was an app downloaded to the phone that was preventing the FBI's software from downloading the contents of the phone. There were two phone numbers associated with this phone. One of those phone numbers was the number Detective Fischbach found in Settles' call history and that was associated with Miller's Facebook account.

{¶21} Todd Wiles testified as a crime analyst for the Cleveland Police Department. Wiles was able to determine that the ZTE phone called Settles' phone at 12:23 p.m. on October 27, 2017 and that "just before 2:00 Mr. Miller calls out to Settles and then Settles calls back to Miller * * *." Furthermore, the cellular phone service provider's data showed both phones were within the proximity of Steelyard Commons at the time in question.

{¶22} Fischbach testified that Miller's phone records indicated that Miller searched the internet for information on the status of the Steelyard shooting. Fischbach also found two Facebook messages from an account owned by "Tony

Miller" and that the defendant's full name is Charles Anthony Miller.  In the first message, Miller stated that "[y]ou have to know me to know me. Get it? Unless they show a booking mug shot, people can speculate all they want.  It's not me in that photo.  Anyhow, I love you, man * * *."  In a subsequent Facebook posting, Tony Miller wrote "[s]tarting with, yeah, I saw it.  And they're blowing it way out of proportion.  I'm a lot of things but a killer of drug dealers is for sure not one of them.  I've never seen, even hear of the guy * * *."

{¶23} Miller was arrested in Georgia on February 23, 2018, at the address listed on the driver's license he had provided when he purchased his vehicle.  During his detention, the state intercepted a letter he wrote laying out his version of events.  Essentially, Miller admitted that he was in Settles' car, but contended that he was assisting Settles by trying to fix a handgun and while doing so, the weapon malfunctioned, exploded and killed Settles.

ECF Doc. 6-1 at 225-232 (alteration in original).

### 4.  Verdict and Sentence

On August 27, 2019, the trial court found Miller guilty on Counts 6 and 7 (having weapons under disability), the counts tried by the court.  ECF Doc. 6-1 at 90; ECF Doc. 6-7 at 123.  The same day, the jury found Miller guilty as to Counts 1 through 5 and all gun specifications.  ECF Doc. 6-1 at 90; ECF Doc. 6-7 at 124-25.

On September 19, 2019, the court sentenced Miller to an aggregate sentence of life imprisonment with parole eligibility after 30-plus years, consisting of: (i) a life sentence on Count 1 (aggravated murder) with parole eligibility after 30 years, plus an additional 54 months for the firearm specifications; (ii) an 11-year term on Count 3 (aggravated burglary); and (iii) 36 months terms on each of Counts 6 and 7 (having weapons under disability).  ECF Doc. 6-1 at 93; ECF Doc. 6-7 at 146-47.  There was no sentence on Counts 2, 4 and 5 because they were merged into Counts 1 and 3.  ECF Doc. 6-1 at 93; ECF Doc. 6-7 at 146.  The prison terms on Counts 1, 3, 6 and 7 were ordered to be served concurrently to one another but consecutively to the 54-month firearm specification terms.  ECF Doc. 6-1 at 93; ECF Doc. 6-7 at 146-47.

B.     **Direct Appeal**

On October 21, 2019, Miller appealed to the Ohio Court of Appeals.  ECF Doc. 6-1 at 96-97.  Miller asserted six assignments of error: (i) Miller's Constitutional and statutory rights were violated when the charges were not dismissed when he was not tried within the statutory time period for speedy trial; (ii) Miller was deprived of his Sixth Amendment right to effective assistance of counsel and his right to a fair trial was violated when the trial court failed to grant a mistrial; (iii) the trial court erred by denying Miller's motion to recuse, when the trial judge who signed the search warrant presided over the related suppression hearing; (iv) Miller's convictions were against the manifest weight of the evidence; (v) the trial court erred when it denied Miller's motion for judgment of acquittal under Ohio Crim. R. 29, because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions; and (vi) the trial court erred by denying Miller's request for a reckless homicide jury instruction.  *See id.* at 112, 132-151.

In support of the first assignment of error, Miller argued that: (i) the delay in his trial was prejudicial; (ii) he had not consented to or been informed of his counsels' various motions for continuances; (iii) he asserted his speedy trial rights several times throughout the case; and (iv) he did not want to consent to waiving his speedy trial rights.  *Id.* at 132-40.  In support of the second, he argued that his right to fair trial had been violated when: (i) the trial court denied his motion for mistrial based on an outburst from the gallery that disparaged Miller, which could not be remedied by a curative instruction pursuant to *State v. Beckwith*;[1] and (ii) defense counsel failed to move for a mistrial after the prosecution engaged in highly inflammatory questioning, whose prejudicial impact was not cured by the trial court striking the question.  *Id.* at 140-42.  In

---

[1] 2012-Ohio-3076, 973 N.E.2d 849, 850 (Ohio Ct. App. 2012).

support of the third, he argued that his right to a fair trial was violated when the trial judge denied a motion to recuse herself because she had decided a suppression motion concerning evidence seized pursuant to a search warrant that she had signed.  *Id.* at 142-44.

In support of the fourth, Miller argued that his convictions were against the manifest weight of evidence because the inconsistent witness testimony, DNA evidence, phone records, and Miller's presence at the scene did not undermine the more plausible theory of the case he offered – "that he went to help fix the gun and when it accidently fired and killed Settles, he panicked." *Id.* at 144-48.  In support of the fifth, he argued that the trial court erred when it denied his Rule 29 motion for judgment of acquittal, because the state did not present sufficient evidence to establish the mens rea elements of all the charges beyond a reasonable doubt.  *Id.* at 148-50.  In support of the sixth, he argued that the trial court erred by denying his request for a lesser included offense instruction on reckless homicide because the evidence of the case was such that a jury could reasonably conclude that Miller acted recklessly, and not knowingly or purposely, citing *State v. Henderson*.[2]  In response, the state filed an appellee brief.  ECF Doc. 6-1 at 155-98.

On August 26, 2021, the Ohio Court of Appeals overruled Miller's assignments of error and affirmed his convictions.  *Id.* at 224-54; *State v. Miller*, 2021-Ohio-2924 (Ohio Ct. App. 2021).  On September 27, 2021, Miller, now proceeding *pro se*, appealed to the Ohio Supreme Court.  ECF Doc. 6-1 at 256-57.  Miller's memorandum in support of jurisdiction asserted six propositions of law:

> (i)  "Appellant's constitutional and statutory rights were violated when the charges were not dismissed when he was not brought to trial and tried within the statutory time period for speedy trial";

---

[2] 2008-Ohio-1631 (Ohio Ct. App. 2008).

(ii)   "Appellant was deprived of Sixth Amendment right to effective assistance of counsel and his right to a fair trial was violated when the court failed to grant a mistrial";

(iii)  "The trial court erred by denying appellant's motion to recuse where the trial judge who signed the search warrant presided over the suppression hearing";

(iv)  "Appellant's convictions are against the manifest weight of the evidence";

(v)   The trial court erred when it denied Appellant's motion for acquittal under Crim.R.29 because the state failed to present sufficient evidence to establish beyond a reasonable elements necessary to support the convictions"; and

(vi)  "The trial court erred by denying appellant's request for a reckless homicide jury instructions."

*Id.* at 260.  The state waived a response.  *Id.* at 310.  On November 9, 2021, the Ohio Supreme

Court declined to accept jurisdiction of Miller's appeal.  *Id.* at 312.

## II.    Federal Habeas Petition

Miller, proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C.

§ 2254 in this court on October 3, 2022.  ECF Doc. 1.  Miller alleged the following six grounds:

**GROUND ONE:** Petitioner's Constitutional and statutory speedy trial rights were violated.

**GROUND TWO:** Petitioner was deprived of Sixth Amendment Right to Effective Assistance of Counsel and [his] Right to A Fair Trial was [] violated.

**GROUND THREE:** Trial court erred in denying Petitioner's motion to recuse, trial judge signed the search warrant.

**GROUND FOUR:** Petitioner's convictions were against the manifest weight of evidence.

**GROUND FIVE:** Trial court erred when it denied Petitioner's motion for acquittal under Crim. R. 29.

**GROUND SIX:** Trial Court erred by denying Petitioner's request for a reckless homicide jury instruction.

ECF Doc. 1 at 5-10.

III.    **Law and Analysis**

A.      **Ground One: Speedy Trial**

In his Ground One claim, Miller appears to assert that his right to a speedy trial under the United States Constitution *and* under Ohio law were violated when he was not brought to trial within the statutory speedy trial deadline set by Ohio law. *See id.* at 5. Warden Hill first responds that a speedy trial claim under Ohio law does not present a constitutional issue and therefore this court need not reach the issue. ECF Doc. 6 at 17. Warden Hill then argues that Miller's speedy trial claim under federal law is meritless because the *Barker*[3] factors weigh against Miller – because all of the alleged delay was attributable to Miller and because he suffered no prejudice. *Id.* at 19-21.

In his traverse, Miller argues that the record demonstrates that he refused to a sign a waiver of speedy trial and he raised the speedy trial issue several times in trial court but was rejected. ECF Doc. 9 at 8-9. He focuses his argument on the alleged delays between March 26, 2018 and September 24, 2018, when his counsel sought continuances without his consent; and he argues that the trial court badgered him into signing a waiver of his speedy trial rights. *Id.* at 9-10.

1.      **Cognizability**

Federal habeas relief is only available for *federal* constitutional violations. 28 U.S.C. § 2254(a). Thus, "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on

---

[3] *Barker v. Wingo*, 407 U.S. 514, 523 (1972).

the basis of a perceived error of state law."). A claim that alleges only errors of state law is cognizable only to the extent that the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

To the extent Miller contends that his speedy trial rights under Ohio statutory law were violated, I recommend that this portion of Miller's Ground One claim be DISMISSED as noncognizable. *See Phillips v. Scheitzer*, No. 3:18-CV-2556, 2020 U.S. Dist. LEXIS 254995, at *24-26 (N.D. Ohio Nov. 10, 2020) (collecting cases).

### 2. AEDPA Deference

To the extent Miller contends that his federal constitutional speedy trial rights were violated, because the state court adjudicated this claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits a federal court to grant relief only if that decision: (i) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (ii) was based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d). "Unreasonable" doesn't simply mean that the state court got it wrong. *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022). Only if no "fairminded jurist" could agree with the state court may we grant relief. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The petitioner must show that the state court's "decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### 3. Ohio Court of Appeals' Analysis

In overruling Miller's claims of a speedy trial violation, the Ohio Court of Appeals first analyzed the course of proceedings and stated why there was no violation of Ohio statuary law:

a.      **Continuances Requested by Defense Counsel**
        **Prior to Miller's Motion to Dismiss**

{¶29} Following Miller's extradition to Ohio, defense counsel requested a series of continuances from March 29, 2018 to September 27, 2018. "'[A] defendant's right to be brought to trial within the time limits expressed in R.C. 2945. 71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent.'" *State v. Williams*, 8th Dist. Cuyahoga No. 100898, 2014-Ohio-4475, ¶ 59 (quoting *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978), syllabus).

{¶30} "Only if the defendant can show that the continuances were unreasonable might a court consider disallowing them for purposes of speedy trial calculation." *State v. Harris*, 8th Dist. Cuyahoga No. 108377, 2020-Ohio-5425, ¶ 26.

{¶31} Here, Miller makes no argument that any of these continuances were unreasonable nor does he point to any evidence in the record that could support the conclusion that the requests for continuances were unreasonable.  At best, Miller provides his unsupported statement that the continuances are unreasonable.

{¶32} These continuances are similar to *Harris*.  Much like Harris, Miller faced a potential life sentence, significant forensic evidence and does not support his claim that the continuances were unreasonable "beyond his mere statements." *Harris*, 2020-Ohio-5425, ¶26.  Thus, Miller has not shown that the trial court erred by not counting the time of these continuances for the purposes of speedy trial calculation.

b.      **Miller's Pro Se Motions**

{¶33} The only argument advanced by Miller that any of the continuances were unreasonable arises after Miller filed a motion to represent himself as well as requesting a psychiatric exam to determine whether he was competent to stand trial.

{¶34} Miller avers that: "Rather than seeking continuances, counsel should have asked the court to address Mr. Miller's pending motion to remove them as his attorneys.  Instead, counsel waited until January 4, 2019, and informed the court they had been unable to prepare for trial or have any meaningful conversations with Mr. Miller since the motion had been filed in September of 2018."

{¶35} Miller filed a motion to disqualify and remove counsel on September 24, 2018.  Two days later, Miller filed two more motions: first, a motion to dismiss the indictment based on speedy trial violations and second, a motion for a psychological exam.

{¶36} The trial court granted Miller's motion for a psychiatric exam on October 31, 2018.  The trial court reasonably determined that it needed to resolve the request

for a psychiatric examination before considering Miller's request to represent himself. The trial court granted Miller's motion to represent himself on December 27, 2018. However, one week later, Miller moved to have counsel reinstated. The court granted Defendant's oral motion for appointment of new counsel at a hearing on January 4, 2019. At that hearing, Defendant expressly agreed to the continuance of the trial date but reserved his rights to raise arguments relying on the previous continuances. This waiver was executed in writing and continued to the trial.

{¶37} Miller's claim of a speedy trial violation, therefore, rests on the time between when Miller filed his prose motions and on January 4, 2019 when Miller agreed to move the trial date in order to retain new counsel.

{¶38} "[T]he time within which an accused must be brought to trial is tolled from the date the accused files a motion challenging his or her competency to stand trial." *State v. Palmer*, 84 Ohio St.3d 103, 103, 702 N.E.2d 72 (1998). That tolling "continues until the trial court makes a competency determination[.]" *Palmer*, 84 Ohio St.3d at 103. Thus, Miller's motion for a psychiatric evaluation on September 24, 2018 tolled the time under the statute. Similarly, Miller's motion to remove his counsel and allow him to proceed pro se tolled the time within which Miller must be brought to trial. *State v. Johnson,* 8th Dist. Cuyahoga No. 106532, 2019-Ohio-3178, ¶ 17.

{¶39} Miller argues that "[t]he trial court's delay in ruling on the motion to disqualify should not be charged against appellant as the law required it to be ruled on expeditiously." However, the trial court determined it should first rule on Miller's motion requesting a psychiatric examination. Only after the report did not provide anything that contradicted the presumption of competency, did the trial court consider whether Defendant could represent himself at trial. Miller makes no argument and points to no evidence that suggests that the consideration of the motion for a psychiatric examination was unreasonably delayed or that the psychiatric examination itself was unreasonably delayed.

{¶40} The trial court reasonably decided that it needed to determine Miller's competency before ruling on his motion to remove his attorneys and allow him to proceed pro se. Because of the time spent on the psychiatric examination, it was not until December 27, 2018 that the trial court found Miller had waived his right to counsel and had the right to defend himself.

*Id.* at 236-37 (alterations in original).

The court then conducted a calculation of Miller's speedy trial days and found no

violation of Ohio law:

{¶41} As noted above, Miller's date of arrest is March 14, 2018 for the purposes of Ohio's Speedy Trial Act. Defense counsel's first request for a continuance was on March 29, 2018.  This counts as 15 days from the arrest.

{¶42} The days between December 27, 2018 (when the trial court granted Appellant's motion to proceed prose) and January 4, 2019 (when Miller asks for counsel to be reassigned) adds a further eight days, making Miller's total time awaiting trial 23 days.

{¶43} Even supposing that Miller is correct and his time should count from his arrest in Georgia (February 23, 2018), this adds only 19 days bringing the total to 42 days.  Adding the time from when Miller filed a motion asking for a psychiatric examination to when the court ordered Miller to be examined by the court's psychiatric clinic increases the total by 35 days for a total of 77 days.  Indeed, Miller makes no argument whatsoever that the trial court's consideration of the motion for a psychiatric examination was unduly delayed nor that the examination itself was unduly delayed.

{¶44} Miller is well short of showing that he was incarcerated awaiting trial for more than 90 days as counted under the statute.

*Id.* at 237-38.

The court then addressed Miller's speedy trial claim under the United States Constitution, using the balancing test factors identified by the Supreme Court in *Barker*: "1) the length of the delay; 2) the reason the government assigns to justify the delay; 3) whether and how the defendant asserts his right; and 4) prejudice to the defendant."  ECF Doc. 6-1 at 238-40.  In overruling this claim, the court stated:

{¶46} Here, we have little difficulty in finding that the trial court did not err in denying Miller's motion to dismiss based on his constitutional right to a speedy trial.  The initial delays were occasioned by motions of defense counsel.  Presumably, these continuances were needed to prepare for trial.  Defendant produced no argument or evidence to show that the continuances were unreasonable.  Further, the next delay was occasioned by Miller moving for a psychiatric examination and for the right to proceed pro se.  After those motions were resolved, Miller himself consented to a delay in order to retain new counsel.  Miller then executed written waivers to extend the trial date so that new counsel had the time needed to prepare for trial.

{¶47} Miller's claim that the continuances sought by defense counsel were unreasonable fails because Miller provides no basis for the court to conclude that

19

the original defense counsel did not need the time to prepare for trial.  Indeed, when new counsel was assigned, they sought, with written agreement of Miller, continuances for that very reason.  Further, Miller's own motion occasioned the delay with respect to the need to determine Miller's competency.

{¶48} Accordingly, Miller has not shown that the trial court erred by denying his motion to dismiss on the grounds that he was denied his right to a speedy trial. We overrule Miller's first assignment of error.

*Id.* at 239-40.

### 4. Discussion

The Sixth Amendment guarantees the right to a speedy trial.  U.S. Const. amend VI; *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967) (enforcing the Sixth Amendment against the states under the Fourteenth Amendment).  Whether that right has been violated isn't measured against specific days or months.  *Barker v. Wingo*, 407 U.S. 514, 523 (1972).  Instead, the Supreme Court prescribed in *Barker* a balancing test, under which courts consider: (i) the length of the delay; (ii) the reasons for the delay; (iii) the defendant's assertion of his right; and (iv) prejudice to the defendant.  *Id*. at 530.  The "triggering mechanism" for the *Barker* test is the length of the delay.  *Id.*  Unless the delay exceeds the point at which it becomes presumptively prejudicial (one year starting from the earlier of the arrest or indictment), the court need not inquire into the other factors.  *Id.*; *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2003).  None of the factors on its own is dispositive.  *Barker*, 407 U.S. at 523.  "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

Ohio has implemented the Sixth Amendment guarantee to a speedy trial by statute, Ohio Rev. Code § 2945.71, *et seq.*; *State v. O'Brien*, 34 Ohio St. 3d 7, 9 (Ohio 1987).  "[A]ny time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*."  *Brown v. Bobby*, 656 F.3d 325, 331 (6th Cir. 2011).

20

Here, the Ohio Court of Appeals' denial of Miller's Ground One claim concerning a violation of federal speedy trial rights, was neither contrary to, nor an unreasonable application of applicable law – in this instance, *Barker*. 28 U.S.C. § 2254(d)(1). The Ohio Court of Appeals acknowledged the *Barker* standard and expressly applied its factors in determining that Miller's federal constitutional right to a speedy trial was not violated. Moreover, as the Sixth Circuit held in *Brown*, a state's consideration of the § 2945.72 factors is consistent with *Barker*, such that the Ohio Court of Appeals' decision was not contrary to clearly established law, as established by the Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Brown*, 656 F.3d at 330-332; *see also Hill v. Sheldon*, No. 1:11-CV-2603, 2014 U.S. Dist. LEXIS 22001, at *5-6 (N.D. Ohio Feb. 21, 2014) (finding that a state court decision was not an unreasonable application of *Barker* when applied through Ohio's speedy trial statute).

The Ohio Court of Appeals' decision was also not based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d). First, the undisputed time that elapsed between Miller's arrest in late February 2018 and his August 2019 trial is approximately one and a half years. This 18-month delay triggered a full *Barker* analysis and weighs in Miller's favor; but the presumption of prejudice from a delay of more than one year does not automatically mean a petitioner's speedy trial right was violated. Petitioner must still demonstrate *substantial* prejudice to prevail. *See Brown v. Romanowski*, 845 F.3d 703, 716 (6th Cir. 2017) ("In this circuit, the defendant is required to show that the delay caused substantial prejudice." (citing *United States v. Ferreira*, 665 F.3d 701, 706 (6th Cir. 2011) (internal quotation omitted)); *United States v. Schreane*, 331 F.3d 548, 557 (6th Cir. 2003).

The second *Barker* factor – the reason for delay – weighs against Miller.  The Ohio Court of Appeals determined that Miller's federal speedy trial rights were not violated because delays in the trial were caused by: (i) early motions from defense counsel seeking continuances, which could be reasonably presumed as needed for trial preparation; (ii) Miller's own motions seeking to proceed *pro se*, requesting new counsel, and moving for a psychiatric examination; and (iii) Miller's written waivers to extend the trial date so his newly appointed counsel could prepare for trial.  *See* ECF Doc. 6-1 at 239.  The record corroborates the Ohio Court of Appeals' finding that Miller's motions and agreement resulted in most of the delay.  *See, e.g.*, ECF Doc. 6-1 at 15-18, 31, 135, 329-32; ECF Doc. 6-2 at 5-6, 11-14, 114-16, 152-153.  Miller argued that he did not know about or consent to his counsel requesting various continuances between March and September 2018, but he has not argued that the continuances sought by defense counsel were either unreasonable or unnecessary to prepare for trial.

The third *Barker* factor – the defendant's assertion of the right – weighs in favor of Miller because he consistently asserted that his speedy trial right was being violated during pretrial proceedings.  ECF Doc. 6-1 at 20-24, 155-57, 236.  However, prejudice, the fourth *Barker* factor, weighs against Miller.  Miller had the burden to demonstrate that he suffered substantial prejudice from the delay.  He has failed to do so.  First, he had not even argued that he suffered substantial prejudice from the delays.  Second substantial prejudice is not evident from the record.  *See United States v. Bass*, 460 F.3d 830, 837 (6th Cir. 2006) (providing that, when a petitioner "fails to provide any particular evidence of prejudice," the prejudice *Barker* factor will "favor[] . . . finding that there was no speedy trial violation").  Given the record, the Ohio Court of Appeals reasonably determined that the delay was largely due to Miller's own motions and the

22

reasonable motions of his defense counsel and there was no violation of his federal speedy trial right.  *See Harrington*, 562 U.S. at 102.

Accordingly, because the Ohio Court of Appeals' conclusion that Miller's federal constitutional speedy trial right was not violated was neither contrary to nor an unreasonable application of federal law, I recommend that this portion of Miller's Ground One claim be DENIED on the merits.

### B.  Ground Two: Right to Fair Trial

Miller's Ground Two claim appears to assert the same Sixth Amendment claims that he asserted under his second assignment of error before the Ohio Court of Appeals: (i) that the trial court erred by denying Miller's motion for a mistrial after a gallery outburst; and (ii) that Miller received ineffective assistance of counsel when his attorneys failed to request a mistrial after improper questioning.  *See* ECF Doc. 1 at 7; ECF Doc. 1-2 at 1, 3; ECF Doc. 6-1 at 140-42.

Warden Hill responds that the trial court's denial of the motion for a mistrial is an exercise of discretion that is not typically reviewable in federal habeas corpus, but he also appears to contend that it lacks merit.  ECF Doc. 6 at 22.  As for the ineffective assistance of counsel claim, Warden Hill argues that: (i) the standard for mistrial in Ohio is quite high; (ii) Miller has failed to explain why the remedy of mistrial was necessary in both state court and in his habeas petition; and (iii) there is no indication of prejudice or serious error such that Miller was deprived of a fair trial.  *Id.* at 27-29.  Miller's traverse added nothing to support this claim. ECF Doc. 9 at 11.

Miller's Ground Two claim is not completely clear.  Out of an abundance of caution, I will review the two subclaims described above in turn.

### 1.  Denial of Mistrial Sub-Claim

#### a.  Cognizability

Miller's claim that the trial court erred by denying his motion for mistrial is not a cognizable claim.  Under Ohio law, the decision whether to grant or deny a motion for mistrial rests within the sound discretion of the trial court.  *State v. Sage*, 31 Ohio St. 3d 173, 182 (1987). And a trial court's discretionary decision is generally a state-law issue that is not cognizable on federal habeas review.  *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) ("[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation.").  However, a petitioner may be able to state a cognizable claim if he can demonstrate that the challenged decision offended some principle so firmly rooted in the traditions and conscience of our system of justice that its violation made the proceeding "fundamentally unfair."  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Dillon v. Warden, Ross Corr. Inst.*, 541 F. App'x 599, 605 (6th Cir. 2013) (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).  Put another way, the claim becomes cognizable when the state-court ruling undermined the "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'"  *Dowling*, 493 U.S. 342, 352 (1990) (internal citations omitted).  However, "[t]he Supreme Court has defined very narrowly the category of infractions that violates fundamental fairness."  *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) (citing *Dowling*, 493 U.S. at 352).

This court has consistently found federal habeas claims that challenge a state trial court's failure to declare a mistrial to be noncognizable.  *See, e.g.*, *Kyle v. Gansheimer*, No. 5:11-cv-1395, 2013 U.S. Dist. LEXIS 171623, at *50-52 (N.D. Ohio, Oct. 3, 2013), *adopted by* 2013

U.S. Dist. LEXIS 171620 (N.D. Ohio, Dec. 4, 2013); *Adams v. Bunting*, No. 1:14-cv-1450, 2015 U.S. Dist. LEXIS 107948, at *21-22 (N.D. Ohio, July 28, 2015), *adopted by* 2015 U.S. Dist. LEXIS 147601 (N.D. Ohio, Oct. 30, 2015); *Pryor v. Miller*, No. 5:15-cv-932, 2017 U.S. Dist. LEXIS 192612, at *18-19 (N.D. Ohio, Oct. 26, 2017), *adopted by* 2017 U.S. Dist. LEXIS 192614 (N.D. Ohio, Nov. 21, 2017); *Hickman v. Bradshaw*, No. 5:16-cv-1077, 2017 U.S. Dist. LEXIS 222699, at *33-34 (N.D. Ohio, Nov. 30, 2017), *adopted by* 2019 U.S. Dist. LEXIS 34977 (N.D. Ohio, Mar. 5, 2019).

Miller has neither argued nor otherwise demonstrated that the trial court's denial of his motion for mistrial – based on an outburst from the gallery – fit within the narrow circumstances which the Supreme Court has determined would undermine "fundamental conceptions of justice" and render a trial fundamentally unfair. *See Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352. Accordingly, I find that Miller has not demonstrated a denial of fundamental fairness sufficient to convert his noncognizable state-law claim into a cognizable due process claim. *Seymour*, 224 F.3d at 552; *Bugh*, 329 F.3d at 512; *Dowling*, 493 U.S. at 352.

I recommend that the portion of Miller's Ground Two claim challenging the denial of his motion for mistrial be DISMISSED as noncognizable.

### b.  Merits

Alternatively, this claim also fails on the merits. The proper question before us is not whether trial court should have declared a mistrial, but whether the appellate court's affirmance of the trial court's decision was an unreasonable application of clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial. . . . The question under

AEDPA is instead whether [the appellate court's decision] was 'an unreasonable application of . . . clearly established Federal law.'").

The Ohio Court of Appeals addressed the trial court's failure to declare a mistrial over the gallery outburst, stating:

> {¶50} "[A] trial court must determine, as a question of fact, whether an emotional outburst in a murder trial deprived the defendant of a fair trial by improperly influencing the jury.  In the absence of clear, affirmative evidence to the contrary, the trial court's determination will not be disturbed."  *State v. Scott*, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, ¶44 (citations and quotations omitted).  "[U]nless there is clear evidence in the record showing the outburst affected the jury, only the trial judge can determine whether the jury was disturbed, alarmed, shocked or moved by the incident or whether the outburst was of such a nature that it necessarily influenced the verdict."  *State v. Roman*, 8th Dist. Cuyahoga No. 92743, 2010-Ohio-3593, ¶22 (quotations omitted).

> * * *

> {¶52} Here, much like the *Roman* case, the record does not indicate precisely what the offending outburst was.  *Roman*, 2010-Ohio-3593, at ¶ 21 ("the record does not indicate what language was contained in the outburst * * * it does indicate defense counsel's interpretation of what the language was, but the record is devoid of any specific language aired in court.").

> {¶53} Appellant contends that this court should reverse this case based on *State v. Beckwith*, 8th Dist. Cuyahoga No. 97318, 2012-Ohio-3076.  In *Beckwith*, the defendant engaged in the crimes of robbery and murder with codefendants.  One codefendant testified that another witness had said that the defendant committed the crimes.  *Beckwith*, 2012-Ohio-3076, ¶21.  The *Beckwith* Court concluded that the trial court erred by failing to declare a mistrial based on the "the unique circumstances of this case[.]"  *Beckwith*, 2012-Ohio-3076, at ¶ 43.

> {¶54} The *Beckwith* Court noted that the purely circumstantial nature of the case made the potential prejudice of the outburst greater.  In the present case, there was ample evidence that was inconsistent with Miller's claim that the shooting was accidental.

> {¶55} *Beckwith* also concerned an outburst from a testifying witness.  This case concerns an outburst from a person in the gallery and the record neither discloses what was said nor who said it.  The record further indicates that the trial court, who witnessed the outburst, considered it doubtful that the jury heard it.

{¶56} Miller has not shown that the trial court erred in denying Miller's motion
for a mistrial.

*Id.* at 240-42.

Miller has not cited any Supreme Court decisions holding that the Constitution requires a

trial court to declare a mistrial when an unexpected outburst from the gallery is made in the

jury's presence.  *See* ECF Doc. 1 at 7; ECF Doc. 1-1 at 140-42; ECF Doc. 9 at 11.  Nor has

Miller demonstrated that the trial court's determination was an unreasonable determination of the

facts in light of the record.  As discussed by the Ohio Court of Appeals, there was no evidence of

what was exactly said or who said it, the outburst was short in duration, and the trial court stated

that it was doubtful the jury even heard the remark.  ECF Doc. 6-1 at 240-42; ECF Doc. 6-4 at

549-52.  Miller has not argued, nor does the record demonstrate, that the state court's decision

was "so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 102.

Accordingly, even if the denial of Miller's motion for mistrial were cognizable, I would

recommend that this portion of his Ground Two claim be DENIED as meritless.

## 2.      Ineffective Assistance of Counsel Sub-Claim

Miller's second subclaim under Ground Two asserts that he received ineffective

assistance of counsel when his attorneys did not move for a mistrial after the prosecution

engaged in improper questioning.  ECF Doc. 1 at 7.

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*,

under which the petitioner must show that: (i) trial counsel behaved unreasonably; and (ii) the

unreasonable performance prejudiced the defense.  466 U.S. 668, 687 (1984).  As with claims

alleging insufficiency of the evidence, claims of ineffective assistance of counsel are subject to

two layers of deference.  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  "[T]he question is

27

not whether counsel's actions were reasonable [but] whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

Under the first *Strickland* prong, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. To satisfy the second, "prejudice" *Strickland* prong, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial would have been different. *Id.* at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989) (quoting *Strickland*, 466 U.S. at 691).

Because the Ohio Court of Appeals adjudicated Miller's claim of ineffective assistance of counsel on the merits, this court must give AEDPA deference to that adjudication. 28 U.S.C. § 2254(d). In denying Miller's claim for ineffective assistance of counsel, the Ohio Court of Appeals stated:

> {¶57} Miller next contends that trial counsel provided ineffective assistance of counsel insofar as they did not move for a mistrial with respect to a question the prosecutor asked the homicide detective.

> {¶58} The transcript Miller points to reads as follows:

> [State]: Do you remember Mr. Lovell telling you that Mr. Miller told him that he didn't have any money at the time and wanted the victim to front him?

[Defense Counsel]: Objection.

[State]: And Settles wouldn't so he had to kill that N*****

[Defense Counsel]: Objection.

The Court: Objection sustained. Please disregard.

[Defense Counsel]: Move to strike.

The Court: Stricken.

{¶59} Miller contends that the trial court's instruction to the jury not to speculate on the truth of any suggestion included in a question that was not answered is insufficient and trial counsel rendered ineffective assistance in failing to move for a mistrial.

{¶60} The defense actually introduced the evidence of the accusation. The statement was included in a letter written by Miller under an assumed name. Defense counsel produced the letter and asked Fischbach to read the letter. The letter contained Miller's claim that the death of Settles was caused by the malfunction and accidental discharge of Settles' own weapon. In material part, the letter states: "Oh, and there's a guy named Rob Lovell that got picked up on a traffic violation and to get out of jail he told the detectives that I admitted to him that I killed this guy arguing over money or drugs." In essence, defense counsel used the letter to introduce Miller's side of the story without placing Miller on the stand.

{¶61} The prosecution then sought to elicit testimony from Fischbach to confirm that Mr. Lovell did indeed state that Miller confessed to killing Settles. The only additional information contained in the prosecution's question is the allegation that Mr. Lovell accused Miller of making a racial slur.

{¶62} The question from the prosecutor was never answered. Accordingly, Miller has not shown that trial counsel engaged in ineffective assistance in not seeking a mistrial on an unanswered question that the trial court struck from the consideration of the jury. Miller does not point to anything in the record that suggests the jury did not comply with the instruction that they "must not draw any inference or speculate on the truth of any suggestions included in a question that was not answered."

{¶63} Accordingly, Miller has not shown that trial counsel was ineffective for failing to seek a mistrial with respect to this testimony.

ECF Doc. 6-1 at 243-44.

Miller has neither argued nor demonstrated that the Ohio Court of Appeals'
determination was contrary to or an unreasonable application of clearly established federal law
or an unreasonable determination of the facts in light of the record.  ECF Doc. 1 at 7; ECF
Doc. 9 at 11.  As recognized by the state court of appeals, defense counsel had already
introduced evidence which apparently prompted the prosecution's line of questioning; the
problematic question was never answered; defense counsel objected to the question and the court
sustained the objection; defense counsel then moved to strike, and the trial court struck the
question.  *See* ECF Doc. 6-6 at 146-55, 173-74.  These circumstances do not demonstrate that
defense counsel's conduct fell blow an objective standard of reasonableness because: (i) the
decision to decline to seek a mistrial but instead to object to the question and seek to have the
question stricken is a reasonable "strategic decision" within the discretion of counsel; and
(ii) Miller has provided no argument to overcome the strong presumption that defense counsel's
decision might be considered sound trial strategy.  *See Strickland*, 466 U.S. at 689.  And even if
Miller had could have successfully argued that defense counsel's failure to move for mistrial fell
below an objective standard of reasonableness, Miller has not demonstrated that a mistrial would
have been granted but for counsel's alleged error.  Nothing in the record would tend to indicate –
and the undersigned is skeptical – that the trial court would have grated such a motion.  *See id.* at
694.

Because Miller cannot establish an ineffective assistance of counsel claim, I recommend
that Miller's Ground Two subclaim on that issue be DENIED as meritless.

### C.    Ground Three: Motion for Recusal

Miller argues that the trial court erred in denying the motion for recusal because the trial
judge adjudicated a motion to suppress evidence after having signed the challenged search

warrant.  *See* ECF Doc. 1 at 8.  Warden Hill responds that this claim is noncognizable and Miller

has made no arguments that the judge was biased at trial.  ECF Doc. 6 at 29-30.  In his traverse,

Miller argues that the judge refusing to recuse herself created a conflict of interest.  ECF Doc. 9

at 11-12.

### 1.        Cognizability

Miller's claim that the trial judge erred when she denied the motion to recuse herself is a

matter of state law, which is not cognizable on federal habeas review.  *See Estelle*, 502 U.S. at

67-68.; *Jeffers*, 497 U.S. at 780.  As stated above, a claim that alleges only errors of state law is

cognizable only to the extent that the "error amounts to a fundamental miscarriage of justice or a

violation of the right to due process."  *McKee*, 526 F.3d at 897.

Here, the trial court's denial of Miller's motion to recuse does not clear this threshold.  At

a pre-trial hearing, the trial court addressed the motion to recuse and stated that:

> There has been no case law presented to me that indicates that because a judge
> signed a search warrant on a case they cannot be the trial judge.  And further, as the
> trial judge I sign many, many warrants.  And I have absolutely no recollection of
> this particular warrant and the facts that were sworn to by the police officer.  And
> so I am going to deny the motion to recuse.  I will listen to the motion to suppress.
> And it's a legal issue.  You've put into issue some things that maybe that were in
> the search warrant is what I'm gathering from what you're saying.  And I am
> confident that I will be able to review it fairly and impartially.

ECF Doc. 6-2 at 183-84.  The Ohio Supreme Court has held that a trial judge who has previously

authorized a search warrant is not disqualified from ruling on the validity of that warrant on a

motion to suppress absent evidence that the judge "will consider the evidence in any manner

other than fairly and impartially."  *State v. Ramirez (In re Basinger)*, 77 Ohio St.3d 1237, 1237,

674 N.E.2d 351 (1996).  Miller has raised no argument in his direct appeal, habeas petition, or

traverse, that the trial court acted impartially or unfairly during the suppression hearing.[4]  ECF Doc. 6-1 at 142-44; ECF Docs. 1, 9.

### 2.      Procedural Default

Moreover, Miller has procedurally defaulted this claim.  He raised the claim on direct appeal; but the Ohio Court of Appeals refused to consider it, because Ohio law requires such claims to be made directly to the chief justice of the Ohio Supreme Court pursuant to Ohio Rev. Code § 2701.03.  ECF Doc. 6-1 at 244-245.  There is no evidence in the record that Miller ever pursued that remedy.  Thus, Miller never fairly presented this claim at all available levels of review available in state court. And there is no dispute that the Ohio Court of Appeals enforced the procedural rule set forth in Ohio Rev. Code § 2701.03.  Under the circumstances, we are prohibited from considering Miller's Ground Three claim unless Miller can show cause and prejudice to excuse his failure to present the claim.  Miller has neither argued nor does the record contain anything that would demonstrate either cause or prejudice.  As a result, the Ground Three claim is both noncognizable and procedurally defaulted.

I recommend that Miller's Ground Three be DISMISSED as noncognizable and procedurally defaulted.

### D.      Grounds Four and Five: Sufficiency of the Evidence

In his Ground Four claim, Miller argues that his convictions were against the manifest weight of the evidence.  ECF Doc. 1 at 10.  In his Ground Five claim, he asserts the trial court

---

[4] The only argument posited by Miller on this issue was in his appellate brief before the Ohio Court of Appeals, when he argued that there was authority to support the proposition that Ohio judges should not proceed over a suppression hearing when they signed the search warrant that is the subject of such a hearing, citing *State v. Neely*, 2012-Ohio-4027, ¶3 (Ohio Ct. App. 2012).  ECF Doc. 6-1 at 143. However, *Neely* merely noted that the trial judge had referred the motion to suppress to a different judge to avoid a potential conflict of interest.  *Neely*, 2012-Ohio-4027, ¶3.  The decision did not mandate, instruct, or otherwise determine that recusal was warranted or required in that situation or in other similar circumstances.

erred when it denied his motion for judgment of acquittal under Ohio Crim. R. 29. *Id.* Warden

Hill addresses Grounds Four and Five together, characterizing them as raising the same

sufficiency-of-the-evidence claim and arguing that this claim is meritless. ECF Doc. 6 at 30-40.

Miller defers to the court in regard to the Ground Four or Ground Five claims "because [he] is a

pro-se litigator and does not comprehend or understand the interpretation of the [claims]." ECF

Doc. 9 at 12.

### 1.    Cognizability

First, the claims under Grounds Four and Five are noncognizable as presented. An

argument that a conviction was against the manifest weight of evidence is a state-law argument.

*See Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007); *Schwarzman v. Gray*, No. 17-

3859, 2018 U.S. App. LEXIS 27193 *8 (6th Cir. 2018) (unpublished) ("A manifest-weight-of-

the-evidence claim in Ohio is a state law claim that is similar to but ultimately different from a

federal constitutional claim that the evidence was insufficient to support a conviction.").

Because Miller's manifest weight claim is a state law claim, it is not cognizable on federal

habeas review. *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780. Similarly, a claim that the trial

court improperly denied a motion for judgment of acquittal pursuant to Ohio Crim. R. 29

presents an issue of state law that is not appropriate for federal habeas corpus review. *Jones v.*

*Welch*, No. 3:10 CV 1173, 2011 U.S. Dist. LEXIS 51549, at *14 (N.D. Ohio Apr. 25, 2011),

*report and recommendation adopted*, 2011 U.S. Dist. LEXIS 80264 (N.D. Ohio, July 22, 2011);

*Smith v. Bobby*, No. 5:04-cv-2353, 2005 U.S. Dist. LEXIS 18125, at *67-68 (N.D. Ohio August.

25, 2005), *report and recommendation adopted*, 2007 U.S. Dist. LEXIS 61361 (N.D. Ohio

August 21, 2007). Accordingly, to the extent that Miller contends the trial court abused its

discretion under Ohio law by denying his motion for acquittal, such a claim does not present a question of federal law and is not cognizable on habeas review.

However, when a *pro se* petitioner raises a noncognizable manifest weight argument, the district court may construe that argument to raise a cognizable sufficiency-of-the-evidence challenge.  *See Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) ("The allegations of a pro se habeas petition, 'though vague and conclusory, are entitled to a liberal construction.'  The appropriate liberal construction requires active interpretation in some cases to construe a pro se petition 'to encompass any allegation stating federal relief.'" (citations omitted)); *Nash*, 258 F. App'x at 764-65 & n.4 (noting that a manifest weight argument can be construed as an evidence insufficiency claim, because a manifest weight argument necessarily subsumes a sufficiency of the evidence argument).  Additionally, a claim that a trial court erred in denying a motion for acquittal pursuant to Ohio Crim. R. 29 is cognizable to the extent the petitioner raises a federal due process claim based on insufficient evidence.  *See Umstead v. Marquis*, No. 5:18-cv-1066, 2019 U.S. Dist. LEXIS 234664, at *32-33 (N.D. Ohio Nov. 8, 2019), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 223176 (N.D. Ohio, Nov. 30, 2020). Accordingly, I recommend that we construe and treat Miller's Ground Four and Ground Five claims to have asserted a single, cognizable sufficiency-of-the-evidence claim.

### 2.    Merits

"The Fourteenth Amendment's Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt."  *Thomas v. Stephenson*, 898 F.3d 693, 702 (6th Cir. 2018) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  When a criminal defendant alleges that the evidence adduced at trial was insufficient to support his conviction, the court must determine whether, "viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  And in applying this standard, courts are mindful that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).

On habeas review, this inquiry is further filtered through the deferential AEDPA standard of 28 U.S.C. § 2254(d).  *Davis v. Lafler*, 658 F.3d 525, 531-35 (6th Cir. 2011) (en banc) (explaining that a state court's decision in a federal habeas sufficiency-of-the-evidence challenge receives "double deference" – first, to the jury's verdict, and second, to the state court's consideration of the verdict); *see also* 28 U.S.C. § 2254(d); *Harrington*, 526 U.S. at 88, 98-99, 102-03; *Schriro*, 550 U.S. at 473.  Thus, a federal habeas court reviewing a sufficiency-of-the-evidence claim must determine whether the state appellate court reasonably concluded that the trial evidence was sufficient for a rational trier of fact to find the essential elements of the crime to have been proven beyond a reasonable doubt.  *See Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  The sufficiency of the evidence determination is based on all the evidence, even evidence erroneously admitted.  *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).

The state appellate court found no merit to Miller's sufficiency-of-the evidence claims. Before the Ohio Court of Appeals, Miller's main contention under his fourth and fifth assignments of error was that the shooting in this case was an accident and there was insufficient evidence to establish that Miller purposefully killed the victim.  ECF Doc. 6-1 at 144-50, 246, 251.  In overruling Miller's fourth assignment of error (manifest weight of evidence), the court stated:

35

{¶75} There was ample evidence in the record to support the conclusion that Miller purposefully killed Settles.  A defendant's purpose may be established by circumstantial evidence.  The law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible to objective proof." *State v. Worley*, __ Ohio St.3d _, 2021-Ohio-2207, ¶ 64

{¶76} The jury could infer from Miller's posture and movements before entering Settles' vehicle that Miller carried a firearm and intended to use it.  This would explain why Miller closed the car door with his left hand when his right hand would have been more natural.  Miller entered the car without anything visible in his hands. Miller then exited the car carrying a backpack.  Nothing in Miller's account of the shooting explained the backpack.  The jury could have inferred Miller fired a pistol from within his pocket explaining why there was no fouling or stippling found on Settles.  The jury could have concluded· that no parts of the exploded firearm were found in the car for the reason that they never existed.  The jury could have determined that Settles being shot in the head by a firearm pointing away from him is not a mystery.  Rather, they may well have concluded that the bullet struck Settles' head because the gun was pointed at his head and the gun was pointed at Settles head because Miller intended to shoot Settles.  "[W]here an inherently dangerous instrumentality was employed, a homicide occurring during the commission of a felony is a natural and probable consequence presumed to have been intended.  Such evidence is sufficient to allow a jury to find a purposeful intent to kill."  *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 137.

{¶77} Amy Jones testified that the defendant appeared to be rifling the pockets of Settles.  Miller's DNA was found in samples taken from Settles' pockets.  Miller claimed that he had only been taking Settles' pulse.  This does not explain, however, how Miller's DNA came to be found in Settles' rear pocket.  Moreover, Miller rifling Settles' pockets is entirely consistent with the state's theory that Miller intended to murder and rob Settles.  Additionally, Miller's statement is inconsistent with the fact that the vehicle's console was found open by investigators.

{¶78} Miller's account also did not explain the phone records reflecting that he had called Settles shortly before the shooting.  Nor does it explain why he picked up every piece of Settles' alleged exploded firearm rather than preserve those pieces as proof of an accident.  Further, Miller's account does not explain why he immediately tried to dispose of, or exchange, the blue Grand Marquis and moved to Georgia.  Miller had a Georgia driver's license but his phone was found in a property in Medina County, Ohio.  Miller stated in one of the Facebook messages that he was in Elkhart, Indiana training to be a pilot, yet he was arrested in Georgia. He also denied knowing Settles while later writing a letter stating that he specifically went to the parking lot at Settles' request.  A juror certainly could have concluded that Miller was being less than honest and could have inferred purposeful intent from his extensive efforts to avoid detection. *Worley*, 2021-Ohio-2207, ¶ 70

("extensive efforts to escape detection, including lying [support the conclusion that defendant] purposely murdered [the victim]").

{¶79} We cannot say that the jury lost its way in concluding that Miller purposely killed Settles.

*Id.* at 247-50.

In overruling Miller's fifth assignment of error (Ohio Crim. R. 29), the court stated:

{¶81} A Crim. R. 29 motion for acquittal tests the sufficiency of the evidence. Accordingly, we review a trial court's denial of a defendant's motion for acquittal using the same standard we apply when reviewing a sufficiency-of-the-evidence challenge. *State v. Hale*, 8th Dist. Cuyahoga No. 107646, 2019-Ohio-3276, ¶ 80 (citations omitted).

{¶82} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks at paragraph two of the syllabus*.

{¶83} The only argument presented by Miller in this assignment of error is that the state did not present sufficient evidence to establish the mens rea elements of each and all of the crimes and specifications "beyond a reasonable doubt" for the reasons that are set forth in assignment of error IV.

{¶84} There was ample evidence in the record to support the inference that Miller purposely killed Settles.

*Id.* at 250-51.

The Ohio Court of Appeals' denial of Miller's sufficiency-of-the evidence claim was

neither contrary to nor an unreasonable application of *Jackson*. 28 U.S.C. § 2254(d)(1).

Although the court cited state law to articulate the standard for evaluating sufficiency-of-the-

evidence claims, the standard that it applied was consistent with *Jackson*.  *Compare* 443 U.S. at 319, with ECF Doc. 6-1 at 101 (quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991)); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that a state court doesn't need to cite the applicable federal decision but need only apply a rule consistent with that opinion).

The Ohio Court of Appeals' decision also did not involve an unreasonable application of *Jackson* or an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  The evidence the Ohio Court of Appeals cited above, and the trial evidence as a whole, were sufficient to permit any rational trier of fact to conclude that Miller purposely killed Settles and to reject Miller's theory that Settles was killed by an accidental explosion of a firearm – particularly when no evidence, other than Miller's own third-person letter, corroborated an accidental killing.  Taken together, the state court's determination that a rational trier of fact could find that Miller purposefully killed Settles was not beyond any possibility of fair-minded disagreement.  *See Harrington*, 562 U.S. at 101.

I recommend that Miller's Ground Four and Ground Five claims be DENIED on the merits.

### E.    Ground Six: Jury Instruction

In his Ground Six claim, Miller contends that the trial court erred in denying his request for a jury instruction on the lesser included offense of reckless homicide.  ECF Doc. 1 at 10. Warden Hill responds that this claim is: (i) noncognizable because it fails to raise a constitutional issue; and (ii) meritless because the Ohio courts correctly noted that Miller's own account of events sounded in negligence and not recklessness.  ECF Doc. 6 at 40-43.  Miller again defers to the court in regard to the Ground Six claim "because [he] is a pro-se litigator and does not comprehend or understand the interpretation of the [claims]."  ECF Doc. 9 at 12.

1.      **Cognizability**

A claim challenging a state court's jury instructions that were given or refused is

generally not cognizable on federal habeas review.  *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir.

2012) ("[A] state court's interpretation of the propriety of a jury instruction under state law

does not entitle a claimant to relief.").  The one exception is when the "ailing instruction by itself

so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*,

414 U.S. 141, 147 (1973); *see also Cottenham v. Nagy*, No. 21-1711, 2022 U.S. App. LEXIS

13219, at *10 (6th Cir. May 16, 2022) (unreported).  "This burden is even greater than that

required to demonstrate plain error on direct appeal."  *Scott v. Mitchell*, 209 F.3d 854, 882 (6th

Cir. 2000) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).  Miller did not raise a due

process argument concerning the jury instructions in either state court or this court.  *See* ECF

Doc. 6-1 at 150-51; ECF Docs. 1, 9.  Thus, I recommend Miller's Ground Six claim be DENIED

as noncognizable.

2.      **Merits**

Alternatively, I would recommend that the claim be dismissed as meritless.  Miller has

not shown that the challenged instructions infected the trial to the point that his due process

rights were violated.  Rather, the record shows that Miller's argument that the trial court should

have instructed the jury on the lesser included offense of reckless homicide was incompatible

with the evidence, Miller's own theory of the case, and the law.  In overruling Miller's sixth

assignment of error, the Ohio Court of Appeals stated:

> {¶88} Here, the trial court did instruct the jury on the lesser included offense of
> negligent homicide.
>
> {¶89} The only evidence in the record that could support a conviction for
> reckless homicide is the letter produced by Miller in which Miller denied ever
> having had possession of the firearm but instead claimed that he was trying to pry

out the extended magazine from the magazine well of the pistol with a slotted screwdriver, while Settles maintained physical control of the firearm.  Certainly, nothing in this account is consistent with the verdict of the jury that Miller displayed, brandished or used the firearm to facilitate the offense.

{¶90} The jury convicted Miller of aggravated murder an element of which is that Miller purposely, and with prior calculation and design, caused the death of Settles.  The jury also found Miller guilty of firearm specifications finding that Miller possessed a firearm "while committing the offense and displayed the firearm, brandished the firearm, indicated that he possessed the firearm, or used it to facilitate the offense." R.C. 2941.145.  The verdict of the jury is inconsistent with Miller's claim of recklessness in its conviction of Miller for aggravated murder, the gun specifications and aggravated robbery.

{¶91} Thus, there can be no reversible error on the court's decision to give only a lesser included offense instruction of negligent homicide.  *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 139 (jury verdict's other interrogatory answers inconsistent with the requested instruction demonstrate defendant was not prejudiced by refusal to give requested instruction).

{¶92} Further, the trial court's decision that Miller's account of events sounded in negligence rather than recklessness was not an abuse of discretion.  Nothing in Miller's account suggested that he knew or should have known that the bullet would be projected towards the driver rather than in the direction that the firearm was pointed.  *See* R.C. 2901.22(C) (statutory definition of recklessness).  The trial court reasonably determined that the correct lesser included charge was for negligence should the jury credit Miller's account of events.  Miller has not shown that the trial court abused its discretion in refusing to instruct the jury on the charge of reckless homicide.

*Id.* at 252-53.

Upon review of the record, it was not unreasonable for the state court to conclude that a jury instruction for reckless homicide was not necessary – particularly given that there was sufficient evidence to support Miller's convictions.  *See State v. Collins*, 2011-Ohio-3241, ¶35 (2011 Ohio Ct. App.) ("A charge on a lesser included offense is only required where the evidence presented at trial would reasonably support *both* an acquittal on the crime charged and a conviction upon the lesser included offense." (emphasis added)).  Thus, the state court's decision did not involve an unreasonable determination of the facts presented. 28 U.S.C.

40

§ 2254(d)(2).  Under these circumstances, AEDPA requires us to defer to the findings of the Ohio courts.  Moreover, Miller has not argued, and the record has not demonstrated, that the decisions by the Ohio courts on the jury instructions were contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or that the decisions were based on unreasonable determinations of the facts in light of the evidence presented in the state court proceedings.  Because Miller has not made these showings, his Ground Six claim fails on the merits.  Accordingly, even if Miller's claim were cognizable, we would be bound to dismiss it for lack of merit.

## IV.  Certificate of Appealability

In order to appeal the denial of federal habeas relief, the petitioner must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1).  To receive a COA, the petitioner must make a "substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).  Specifically, he must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  And when a claim is denied on procedural grounds, the petitioner "must show that reasonable jurists could disagree about the both the procedural ruling and the underlying constitutional claim."  *Winburn v. Nagy*, 956 F.3d 909, 912 (6th Cir. 2020) (citing *Slack*, 529 U.S. at 484).  If the court accepts my recommendations, Miller will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  All of Miller's claims are either noncognizable, meritless, or both, and one is procedurally defaulted.  Because jurists of reason would not find these conclusions to be debatable, I recommend that no COA issue in this case.

## V.       Recommendation

I recommend that Miller's petition for writ of habeas corpus under 28 U.S.C. § 2254 be

DENIED and that his claims be resolved in the following manner: (i) Ground One be

DISMISSED in part as noncognizable, to the extent Miller raises a speedy trial claim under Ohio

law; (ii) Ground One be DENIED in part as meritless, to the extent Miller raises a speedy trial

claim under federal law; (iii) Ground Two's claim concerning the denial of the motion for

mistrial be DISMISSED as noncognizable or DENIED as meritless; (iv) Ground Two's claim

concerning ineffective assistance of counsel be DENIED as meritless; (v) Ground Three be

DISMISSED as noncognizable and procedurally defaulted; (vi) Grounds Four and Five be

construed together as asserting a sufficiency of the evidence claim and collectively DENIED as

meritless; and (vii) Ground Six be DISMISSED as noncognizable or DENIED as meritless.  I

further recommend that Miller not be granted a COA.

Dated: November 22, 2023

Thomas M. Parker

United States Magistrate Judge

---

### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may
serve and file specific written objections to the proposed findings and recommendations of the
magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§
636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the
assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the
right to raise the issue on appeal either to the district judge or in a subsequent appeal to the
United States Court of Appeals, depending on how or whether the party responds to the report
and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be

specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).